IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL CASE |
| v : | |
| : | No. 4:18-CR-274 (LGW)(BWC) |
| PABLO RANGEL-RUBIO : | |
| JUAN RANGEL-RUBIO : | |
| _____: | |

**JOINT MOTION TO SUPPRESS EVIDENCE**

Comes now, PABLO and JUAN RANGEL-RUBIO, Defendants in the above-styled action, by and through undersigned counsel and move this Court to suppress evidence seized as a result of a search conducted at 275 Milton Rahn Road, Rincon, Georgia, on August 20, 2017. In support of this Motion, the Defendants show as follows:

**Facts**

On August 19, 2017, the body of Eliud Montoya was discovered on Old Dean Forrest Road, Garden City, Georgia. Mr. Montoya had been shot a number of times by what the coroner believed was a small caliber weapon, perhaps a .22. Detective Rodriguez of the Garden City Police Department was dispatched to the scene and soon determined a homicide had occurred. He was informed that the victim's mother was at the scene and when he approached her she informed the detective that Mr. Montoya had issues with his supervisor at work, Pablo Rangel-

1

Rubio, and she stated that Pablo had killed her son. Detective Rodriguez also spoke with Mr. Montoya's wife who made the same accusation against Pablo. She, in addition, provided the detective with paperwork indicating Mr. Montoya, on August 17, 2019, had filed a complaint with the EEOC. Included in the paperwork he obtained were three typed, notarized statements from Mr. Montoya's co-workers. The affiants, in their statements, raised a number of complaints against their supervisor. They all admitted to being illegally in the United States. Two of them claimed they paid Pablo $1,500.00 for social security numbers and identities so as to be allowed to work. All claimed they were not paid appropriately for their work and that their supervisor took advantage of them because they were illegal. A search of Mr. Montoya's car revealed a notebook with the handwritten note saying: "Discharge by X_____ for 3 days for not signing a safe practice violation that wasn't true. Hey are always watching me because of a complaint I put on ways they let the Foreman treats their employees."

Later that same day, Joel Reyes, one of the co-workers Rodriguez believed[1] had submitted one of the signed, notarized statements, was interviewed by

---

[1] While there was a statement purportedly signed by Mr. Reyes and notarized by Eliud Montoya, Detective Rodriguez learned that the statement had not been either written or authorized by Mr. Reyes, was not signed by Mr. Reyes, and contained factually inaccurate information. Rather, Mr. Montoya forged the signature of Mr.

Detective Rodriguez. Also that day, Detective Rodriguez determined that a nephew of Pablo, Refugio Ramirez, had been arrested in 2014, for carrying a concealed weapon, a .22 caliber pistol. Based on his investigation, Detective Rodriguez drafted an application for a warrant to search 275 Milton Rahn Road, Rincon, Georgia. The affidavit, in its entirety, read:

> On August 19, 2017 Garden City Units were dispatched to a non-responsive person located at the 1300 block of Old Dean Forest Road. Upon Your Affiant arrival to the scene, I observed a male lying face down motionless. Officer Fuller checked the victim for a pulse however none was felt. EMS then arrived on scene and turned the victim over to check for vitals. It was at that time, Your Affiant was advised by EMS that the victim had a gunshot wound to the back of the head. Furthermore Your Affiant observed the victim's nose was broken and blood was all over his mouth and stomach. Your Affiant determined this would be a homicide investigation at that time.
>
> Your Affiant then began photographing the scene. Your Affiant observed the victim appeared to be working on a large tree service work truck, and there was a silver older model Honda parked next to the work truck which was still running. Your Affiant had officers run the registration on the Honda and it returned to the Victim, Eliud Montoya. Your Affiant further noticed his current address was 59 Village Drive which was within walking distance where the decedent was currently located.
>
> While processing the scene, Your Affiant was advised the victim's mother was on scene. Your Affiant advised her of the current situation. Without hesitation she

---

Reyes and then notarized the forgery. *See*, Joint Motion for *Franks v. Delaware* Hearing, filed simultaneously with this Motion.

advised his boss killed him. She stated Pablo Rangel, whom is Eliud's boss recently had a falling out which lead to Eliud being suspended for three days. She specified the date of occurrence being 08/1712017. She further specified that same day Eliud went to the Equal Employment Opportunity Commission to file a complaint on Pablo. She advised they had documentation at the house reflecting this information.

Your Affiant then drove to 59 Village Drive where I personally met with Maria Montoya the victim's wife. Maria was very distraught when Your Affiant notified her of her husband's death. Your Affiant asked Maria if she suspects anyone whom may have wanted to harm her husband. Maria advised Your Affiant the same information Eliud's mother had just provided, with the sole exception of providing multiple documentations her husband had kept regarding the company. Maria also provided Your Affiant with a Manila Envelope with the heading of Equal Employment Opportunity Commission. Inside the Manila envelope Your Affiant observed four legal statements in which three were notarized by Eliud Montaya and the fourth having been written by Eliud. All four typed documents advise they are all employees of Wolf Tree Expert and they are in the United States illegally. They advise for this very reason they are mistreated and taken advantage by their supervisor Pablo Rangel. They all advised they don't receive proper wages since Pablo keeps some of their money on a weekly basis. Furthermore they advise they bought several individuals identity's whom they did not know for $1500 dollars. This was done so they could work in the US and obtain a paycheck. Armed with these documents Eliud met with agents of the EEOC.

Your Affiant then went back to the crime scene which was being processed by other detectives. Once on scene, Your Affiant observed the Chatham County Deputy Coroner Carol Green was on scene examining the body. It was at that time where we observed the victim was shot

three times. Two of the rounds struck the victim in his back as well as a third round striking the victim in the back of his head. It was apparent from the evidence on scene Eliude was shot with a small caliber bullet possibly a .22 caliber bullet.

Your Affiant further determined the victim was wearing pajama pants and a T-shirt as well as flip flop shoes. The victim's cell phone was inside the work truck and his wallet was at home. It should be noted Your Affiant did not observe any defensive style nor offensive style wounds on the victim. Furthermore it did not appear the victim was killed as a result of a robbery since Eliuds vehicle was still on scene as well as nothing appearing to be missing.

After clearing the crime scene, Eluid's vehicle was transported to the Garden City Police Department to be forensically searched for any possible evidence. Inside his vehicle Det Reyes located a yellow composition notebook. Inside one of the pages Your Affiant reviewed the following written inside the notebook; Discharge by X_____ for 3 days for not signing a safe practice violation that wasn't true. Hey are always watching me because of a complaint I put on ways they let the Foreman treats their employees.

It was apparent this letter was written since 08117/2017 since Your Affiant reviewed the document in question that Eluid was suspended for.

After gathering the facts related to this investigation, Your Affiant observed Eliud had filled a previous EEOC complaint on Pablo.

At 1900 hours, Joel Reyes came by the Garden City Police Department to be interviewed by Your Affiant. Joel was one of the males whom Eliud had paperwork accusing Pablo of Fraud. In the interview Joel advised everything written in his signed document to be true. Joel

5

> advised Pablo would indeed provide employees with Alias, social security numbers, and date of births so they could be added to the company payroll. Joel advised this was the reason Pablo did not want Eluid providing this information to anyone. Your Affiant asked Joel if he was surprised Eliud was dead. Joel advised he was not. He stated he told Eliud to leave Pablo alone since he was going to have him killed. Joel advised he didn't think Pablo could kill Eliud but he has family whom could kill him.
>
> While Your Affiant was conducting a criminal History check on Pablo, it was brought to light that he has a nephew whom he lives with in Springfield Georgia. His name is Refugo Ramirez. Your Affiant reviewed a report from 2014 written by Savannah Chatham Metro Police Department CRN #141223011. In this report Refugo Ramirez was listed as a suspect. Refugio was arrested in possession of a concealed firearm. The firearm was listed as a .22 magnum SuperX pistol bearing serial number 244582. The caliber of said handgun matches that which was suspected to be used to Murder Eluid. It should be noted not only does Refuge work with the same company as the victim but he also lives in a trailer located on his uncles property located at 275 Milton Rahn Road, Springfield, Georgia. Eliud further has warrants out for his arrest through Chatham County Recorders court.
>
> Your Affiant firmly believes enough probable cause has arisen to show Pablo is involved in the Murder of Eliud Montoya. Your Affiant Firmly believes the fruits of the crime due exist inside the residence located at 275 Milton Rahn Road.

*See* Appendix A. At 11:23 a.m., on August 20, 2019, Detective Rodriguez met with a state court magistrate judge Rhonda Sexton, who signed the warrant. Thereafter, Detective Rodriguez, accompanied by various Garden City police

6

officers, Effingham County investigators and federal agents (FBI and HSI) executed the search warrant at 275 Milton Rahn Road seizing various firearms, ammunition, cell phones and other items.

## Argument and Authority

### A. The Search Warrant on Its Face, Lacks Probable Cause

The Fourth Amedment prohibits law enforcement, with a few narrow exceptions not pertinent here, from searching a home without a properly issued search warrant. *Agnello v. United States*, 269 U.S. 20, 32 (1925). No warrant shall "issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Probable cause is said to be evidence that would lead "a man of reasonable caution [to believe] that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949). In determining the validity of a warrant "[p]robable cause . . . requires a nexus between suspected criminal activity and the place to be searched." *United States v. Danhouer*, 229 F.3d 1002, 1006 (10th Cir. 2000) (quoting, *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990). "For a finding of probable cause to satisfy this nexus requirement, there must be a fair probability both that a crime has been committed and that evidence of its commission will be found in the location to be searched." *United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012). As the Eleventh Circuit has stated, "The focus of a warrant application is usually

on whether the suspect committed a crime and whether evidence of the crime is to be found at his home or business." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (quoting *United States v. Procopio*, 88 F.3d 21, 28 (1st Cir. 1996)). *See also, United States v. Hicks*, 575 F.3d 130, 136 (1st Cir. 2009)("A search warrant application must demonstrate probable cause to believe that: 1) a crime has been committed, and 2) enumerated evidence of the offense will be found at the place to be searched."); *United States v. Neal*, 500 F.2d 305, 307 (10th Cir. 1974). When determining the quantum of proof required to establish probable cause "mere suspicion, rumor, or strong reason to suspect are not sufficient." *United States v. Vigeant*, 176 565, 569 (1st Cir. 1999) (quoting *United States v. Han*, 74 F.3d 537, 541 (4th Cir. 1996)). When, as here, a defendant challenges the sufficiency of a search warrant, the reviewing court is to "assess[] the information provided in the four corners of the affidavit." *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999).

   **1. The Warrant fails to establish a nexus**

     **a. There's nothing to connect Pablo to the killing of Mr. Montoya**

As an initial matter, the warrant fails to establish probable cause to believe Pablo Rangel-Rubio committed an offense.[2] There can be no doubt a crime

---

[2] The search warrant affidavit indicates Mr. Reyes stated that he believed Pablo's family could have killed Mr. Montoya. However, an examination of the transcript

occurred. Mr. Montoya was killed. But there is nothing in the four corners of the warrant that would lead "a man of reasonable caution to believe" Pablo had anything to do with killing him. In order for the search of the Rangel-Rubio property and residences contained thereon to be constitutional the "warrant application [had to] demonstrate probable cause to believe that a particular person has committed a crime, . . . *and* that enumerated evidence relevant to the probable criminality likely is located at the place to be searched" *United States v. Zayas-Diaz*, 95 F.3d 105, 110-11 (1st Cir. 1996) (emphasis in original). If the warrant does not establish probable cause to believe Pablo or any member of his family was involved in the killing of Mr. Montoya, there can be no reason to suspect evidence of the crime will be found on the property. *See United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) ("the connection between the residence and the evidence of criminal activity must be specific and concrete, not vague or generalized." (internal quotations omitted)). *See also*, *United States v. Grant*, 682 F.3d 827, 832-33 (9th Cir. 2012) (because affidavit provided "no evidence" linking the defendant with the killing, it "did not establish a fair probability that the gun or

---

and a review of the taped recording reveals that Mr. Reyes never stated that Pablo's family was capable of killing Mr. Montoya. See Joint Motion for a *Franks v. Delaware*, Hearing filed simultaneously with this Motion. Otherwise, the search warrant affidavit makes no assertion that anyone other than Pablo was suspected in the killing.

ammunition would be in [the defendant's] home . . ." [3]).  At best, the affidavit in the instant case merely "states suspicions, or conclusions, without providing some underlying factual circumstances regarding, veracity, reliability, and basis of knowledge, [and] is so vague as to be conclusory or meaningless." *United States v. Tucker*, 742 Fed. Appx 994, 999 (6th Cir. 2018).

The assertion that Pablo killed Mr. Montoya, made by Montoya's mother and wife, cannot support a finding probable cause because they were "conclusory [and gave] the magistrate virtually no basis at all for making a judgment regarding probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *Nathanson v. United States*, 290 U.S. 41, 47 (1933 ("a warrant to search a private dwelling may [not] rest upon mere affirmance of suspicion or belief without disclosure of supporting facts or circumstances."); *United States v. Vigeant*, 176 F.3d 565, 569 ("the conclusory statements of the affiant that might otherwise have helped create probable cause are entirely without factual support.").  There is nothing to indicate they had any personal knowledge of the issues between Pablo and Mr. Montoya; nothing to indicate Pablo ever threatened Mr. Montoya; nor is there any indication Pablo knew of the EEOC complaint filed by Mr. Montoya.  In short, all that can be

---

[3] The Court also found some of the information in the affidavit stale and included that in its reasoning.  However, an examination of the entire opinion reveals that it was a lack of connection to the crime that formed almost the entire premise for the Court finding the warrant lacked probable cause.

said about the information given by Mr. Montoya's mother and wife is that they, without proof, suspected Pablo killed their loved one.

The fact that Mr. Montoya had filed an EEOC complaint likewise cannot support a finding of probable cause. First, the complaint is not against Pablo, it is against Davey Tree Experts. Second, Detective Rodriguez had absolutely no evidence that Pablo even knew about the complaint. This aspect of the affidavit is so vague and disconnected its inclusion is meaningless.

Likewise, his interview with Joel Reyes gave Detective Rodriguez *no evidence* Pablo or any of his family were involved in the killing of Mr. Montoya. Mr. Reyes' statement that "he told Eliud to leave Pablo alone since he was going to have him killed"[4] is not supported by any evidence or assertion that Mr. Reyes had any personal knowledge Pablo intended to have Mr. Montoya killed and, like the statements of Mr. Montoya's mother and wife, are conclusory and not substantiated by any corroborating facts. Moreover, when asked directly, Mr. Reyes said he did not believe Pablo killed Mr. Montoya.[5]

---

[4] A review of the transcript of the Reyes interview reveals that this statement was never made. *See*, Joint Motion for a *Franks v. Delaware* Hearing filed simultaneously with this Motion.

[5] Detective Rodriguez's assertion that Mr. Reyes said he believed there were members of Pablo's family "whom [sic] could kill him" is "conclusory" and cannot support a finding of probable cause to believe Pablo or any of his family were connected to the killing of Mr. Montoya. In addition, a review of the transcript of the interview Detective Rodriguez conducted of Mr. Reyes reveals

11

The Seventh Circuit found a warrant application lacked probable cause in an analogous case. In *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002), the affidavit in support of the search warrant stated that law enforcement seized a large amount of drugs from a residence. The officer stated the "investigation revealed" the drugs came from the defendant. A named informant was reported to have said he was at the defendant's home earlier and saw large amounts of similar drugs. The named informant also claimed to have purchased drugs from the defendant "in the past." Further, the named informant said that the defendant was a member of a motorcycle gang and would shoot it out with police. *Id*. at 867. The Court held the warrant application lacked probable cause[6] as the "affidavit presented the magistrate judge with little more than mere conclusions and assertions of wrongdoing of the defendant, without an adequate factual foundation, based on the testimony of a previously unknown informant." *Id*. The Montoya family members and Joel Reyes are "previously unknown informant[s]" who offered "little more than conclusions and assertions of wrongdoing of [Pablo], without an adequate factual foundation." Like in *Koerth*, this Court should find the search warrant at issue here lacked probable cause. *See also*, *United States v. Danhouer*, 229 F3d.

---

that Mr. Reyes never actually made that statement. *See* Joint Motion for *Franks v. Delaware* Hearing filed simultaneously with this Motion.

[6] The magistrate court and district court in *Koerth* also found the warrant deficient and on appeal the government conceded the point. *Id*.

1002, 1006 (10ᵗʰ Cir. 2000) ("affidavit replete with repetitive and tenuous facts" does not establish probable cause)

Detective Rodriguez and the Montoya family may have had a hunch or even a belief Pablo or his family were involved in the killing of Eliud Montoya, but they had no proof.  A court may not "arrive at probable cause simply by piling hunch upon hunch." *Poolaw v. Marcantel*, 565 F.ed 721, 720 (10ᵗʰ Cir. 2009). *See also*, *United States v. Johnson*, 256 F.3d 895, 905 (9ᵗʰ Cir. 2001) (Supreme Court "has made it clear that 'hunches' are insufficient to establish reasonable suspicion, let alone probable cause." (citing *Illinois v. Wardlow*, 528 U.S. 119, 123-34 (2000)). There is no nexus between the crime and the place to be searched and the warrant lacked probable cause.  Any subsequent search and seizure based on the faulty warrant were unconstitutional and any evidence seized must be suppressed.

        **b.**    **Any evidence connecting a weapon to Pablo or his family was insufficient to establish probable cause**

Detective Rodriguez, while doing a criminal history search on Pablo, discovered that Refugio Ramirez, a nephew of Pablo's who worked for Wolf Tree, Inc. and who purportedly lived on the property, had been arrested ***in 2014***, almost three years prior to the warrant application, for carrying a concealed ".22 magnum SuperX pistol."  First, the information is stale in that the weapon was possessed almost three years prior to the killing of Mr. Montoya and there is no evidence a weapon was possessed by Refugio any time after 2014.  Second, the warrant

13

application offers no evidence of how Refugio may have been involved in the killing of Mr. Montoya.  Third, there is no other evidence that Pablo or any of his family living on the property owned or possessed weapons.

### c. Information pertaining to allegations Pablo mistreated employees, failed to pay employees all of their wages and provided false identification to who were in the United States illegally does not establish probable cause to believe the items to be seized would be found on Pablo's property

The affidavit submitted by Detective Rodriguez contains information about three signed and notarized statements purportedly from three unnamed Wolf Tree, Inc. employees which were located in the EEOC paperwork provided by Mr. Montoya's wife.  Each of the of the workers who submitted signed statements assert:  (1) they are illegally in the United States; (2) Pablo charged them $1,500.00 for social security numbers and identification so they could work; (3) they are taken advantage of and mistreated by Pablo; and (4) Pablo keeps a portion of their wages.  Further, Detective Rodriguez reports that Joel Reyes is one of the employees reflected on the paperwork provided by Mr. Montoya's wife.  He is said to confirm everything in his signed statement was true.  Further, Mr. Reyes is said to confirm that Pablo provided "employees with Alias, [sic] social security numbers and date of births [sic] so they could be added to the company payroll."  Mr. Reyes is reported to further claim "this was the reason Pablo did not want Eluid providing this information to anyone."  While the statements of the unnamed

employees and Reyes may implicate Pablo in some illegal activity, nothing about what they say in any way indicates his involvement in the killing of Mr. Montoya. Thus, there is nothing provided by these informants that would provide the nexus between the criminal activity they describe and the things to be seized listed in the warrant which were: "Any guns, gun components, ammunition, gun magazines, shell casings, cellphones notes written by or to Pablo Rangel about this homicide and any other items related to the aforementioned crime of murder."

Because "evidence seized during an unlawful search [can] not constitute proof against the victim of the search" *Wong Sun v. United States*, 371 U.S. 471, 484 (1963), any evidence seized as a result of the search of 275 Milton Rahn Road and surrounding property must be suppressed.

### B.    The Good Faith Exception of *United States v. Leon*, 468 U.S. 897 (1984) does not Apply on the Facts of this Case

Once a "defendant is successful in establishing the invalidity of the search warrant, the burden then shifts to the Government to establish that the police relied in good faith on the judge's decision to accept the affidavit and issue the warrant." *United States v. Koerth*, 312 F.3d at 868 (citing *Leon v. United* States, 468 U.S. at 294). As the Supreme Court has noted, "[w]hen evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). The use of the word

15

"usually" foretells the exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984). The Court in *Leon* held that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" need not be suppressed. *Id*. at 922. The Court recognized at least four instances where the "good faith exception" would not apply: (1) where the warrant was obtained by material misstatements or omissions that were presented deliberately or in reckless disregard for the truth; (2) where the magistrate wholly abandoned his judicial role; (3) where the warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where a warrant is so facially deficient, the executing officers cannot reasonably presume it to be valid. *Id*. at 923. It is the government's burden of establishing a "good faith exception" to the exclusionary rule. *United States v. Travers*, 233 F.3d 1327, 1331, n.2 (11th Cir. 2000); *United States v. Robinson*, 336 F.ed 1293, 1297 (11th Cir. 2003).

In essence, the affidavit in question can be classified as a "bare bones affidavit. As the Sixth Circuit has noted:

> an affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a bare bones affidavit. A bare-bones affidavit, in turn, is commonly defined as one that states only suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge. Put more simply, a bare-bones affidavit is a

16

>conclusory affidavit, one that asserts only the affiant's belief that probable cause existed. It provides nothing more than a mere guess that contraband or evidence of a crime would be found, either completely devoid of facts to support the affiant's judgment that probable cause exists, or so vague as to be conclusory or meaningless.

*United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (internal quotations and citations omitted). A bare bones affidavit is "so lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003).

The government cannot establish Rodriguez's good faith reliance on the warrant in question because the affidavit here is so lacking in indicia of probable cause that no reasonable officer would rely on it. At most, the affidavit only states "suspicions, beliefs, or conclusions" of the Montoya family and Mr. Reyes. The affidavit here is "conclusory" and is "devoid of facts to support the affiant's judgment that probable cause exists." As noted above, there is no evidence connecting the crime that was committed - - the murder of Mr. Montoya - - to the place to be searched - - Pablo's home and property. The accusations of Mr. Montoya's mother and wife are solely conclusory and not supported by any objective evidence. Similarly, the information provided by Mr. Reyes relates in no way to the crime of murder and specifically disavows that Pablo committed the crime. Lastly, the only connection to any weapon was stale and too remote as

17

there is no allegation Refugio was involved in the killing of Mr. Montoya and there was nothing in the affidavit to indicate Refugio possessed a weapon in and around the time of the murder.

WHEREFORE, Pablo Rangel-Rubio moves this Court to suppress all evidence seized as a result of the search conducted on August 20, 2017, at 275 Milton Rhan Road.

Dated, this the 21st day of October, 2020.

Respectfully submitted,

*/s/ Jeffrey L. Ertel*  
JEFFREY L. ERTEL  
State Bar No. 249966

Federal Defender Program, Inc.  
101 Marietta Street, Suite 1500  
Atlanta, GA  30303  
(404) 688-7530  
jeff_ertel@fd.org

*/s/ Mark Evan Olive*  
MARK E. OLIVE

Law Office of Mark E. Olive  
320 West. Jefferson Street  
Tallahassee, FL 32301  
(850)224-0004  
meolive@aol.com

Counsel for Pablo and Juan Rangel-Rubio

18

CERTIFICATE OF SERVICE

I hereby certify that I have this day served all the parties in the above-captioned case in accordance with the directives from the Court Notice of Electronic Filing which was generated as a result of electronic filing.

Dated, this the 21st day of October, 2020.

*/s/Jeffrey L. Ertel*