# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

```
UNITED STATES OF AMERICA,    )
                             )
     v.                      )      4:18-CR-274-2
                             )
JUAN RANGEL-RUBIO,           )
                             )
     Defendant.              )
```

## ORDER

This action is before the Court on Defendant Juan Rangel-Rubio's renewed motion for judgment of acquittal, dkt. no. 705, and motion for new trial, dkt. no. 706. For the reasons given below, the motions are **DENIED**.

## BACKGROUND

Juan Rangel-Rubio ("Defendant") was tried for conspiracy to conceal, harbor, and shield illegal aliens under 8 U.S.C. § 1324(a)(1)(A)(v)(I), dkt. no. 2 at 7–15; money laundering conspiracy under 18 U.S.C. § 1956(h), id. at 16–17; conspiracy to kill a witness under 18 U.S.C. § 1512(k), id. at 19–21; and conspiracy to retaliate against a witness under 18 U.S.C. § 1513(f), id. at 22–24.

During jury selection, Defendant objected to the United States' exercise of its peremptory strikes as discriminatory under Batson v. Kentucky, 476 U.S. 79 (1986). Dkt. No. 715 at 93:22–

94:6. Specifically, the United States exercised five peremptory strikes to strike one black male, one Hispanic female, and three black females. Id. at 94:8-96:1; Dkt. No. 706 at 2. There were two black jurors who remained on the jury, and the Government declined to exercise its remaining strike. Dkt. No. 715 at 94:12-14.

After hearing from Defendant, the Court found that Defendant had produced sufficient evidence to draw a conclusion that an inference of discrimination occurred. Id. at 96:2-6. In response, the Government provided the following non-discriminatory reasons for striking these potential jurors: (1) Juror # 20 was inattentive and speaks Spanish, id. at 96:12-97:10; (2) Juror # 45 had a husband who worked with a local Longshoremen Association, which has been subject to multiple law enforcement actions, and the potential juror's eyes were closed, id. at 97:12-24; (3) Juror # 5 had a prior negative encounter with law enforcement and was self-employed with less stable employment than other potential jurors, id. at 97:25-98:9; (4) Juror # 31 was unemployed or had unstable employment, was single and inattentive, and there was a factual disparity in documents submitted to the Court and the answers given in court, id. at 98:11-99:9; and (5) Juror # 24 owned and operated a "smoke shop," which, the government noted, is at times associated with illicit activity and subject to regulatory oversight that may make the potential juror disfavor the Government, id. at 99:11-21. Defendant responded that other potential jurors had

connections to the local Longshoremen Association and were inattentive. Id. at 99:22–100:11. However, Defendant was unable to point to any specific juror with such connections or attributes. Id. at 99:22–100:2. The Court then found that, based on the particular facts of the case, the Government had provided sufficient race- and gender-neutral explanations for the strikes—supported by the Court's observations of counsel and the potential jurors' demeanor—and overruled Defendant's Batson objection. Id. at 100:12–101:19.

At the close of the Government's case in chief, Defendant moved for a judgment of acquittal,[1] arguing that the Government had provided insufficient evidence to establish venue. Dkt. No. 717 at 136:13–137:1. The Court overruled the motion and took judicial notice pursuant to Federal Rule of Evidence 201 "that many of the locations that were identified in the course of the trial and in the evidence are cities within the Southern District of Georgia[,]" and that Chatham County, the county in which the death occurred, is within the Southern District of Georgia. Id. at 137:18–19, 138:14–25.

---

[1] Rule 29 was modified such that what was previously termed a "motion for a directed verdict" is now termed a "motion for judgment of acquittal." Fed. R. Crim. P. 29 advisory committee's notes to 1944 amendment. "The change of nomenclature, however, does not modify the nature of the motion." Id. Thus, when Defendant moved for a directed verdict at trial, dkt. no. 717 at 136:22–37:1, it was properly treated as a motion for judgment of acquittal under Rule 29.

3

The jury found Defendant guilty on all counts. Subsequently, Defendant filed a motion for new trial under Federal Rule of Criminal Procedure 33 alleging discrimination during jury selection. Dkt. No. 706 at 3. Defendant also renewed his motion for judgment of acquittal under Rule 29 alleging insufficient evidence of venue. Dkt. No. 705.

## DISCUSSION

### A. Motion for New Trial

Federal Rule of Criminal Procedure 33(a) permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." "The decision to grant or deny the new trial motion is within [the] sound discretion of the trial court." United States v. Wilson, 894 F.2d 1245, 1252 (11th Cir. 1990). Here, Defendant contends a new trial is warranted because he alleges a Batson violation occurred. "Batson holds that 'by denying a person participation in jury service on account of his race, the State unconstitutionally discriminate[s] against the excluded juror.'" United States v. Allen-Brown, 243 F.3d 1293, 1297 (11th Cir. 2001) (quoting Batson, 476 U.S. at 87); see also J.E.B. v. Ala. ex rel. T.B., 511 U.S. 127, 129 (1994) ("We hold that gender, like race, is an unconstitutional proxy for juror competence and impartiality.").

Once a party raises a Batson objection,

4

> (1) the objector must make a prima facie showing that the peremptory challenge is exercised on the basis of race; (2) the burden then shifts to the challenger to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the objector has carried its burden of proving purposeful discrimination.

Allen-Brown, 243 F.3d at 1297. At Batson's third step, the Court must evaluate the persuasiveness of the Government's justifications. Atwater v. Crosby, 451 F.3d 799, 806 (11th Cir. 2006). The Court must determine whether the Government's race- and gender-neutral explanations are credible, and "'implausible or fantastic justification[]' may be found to be pretextual." Id. (quoting Miller-El v. Cockrell, 537 U.S. 322, 339 (2003)). "In assessing the credibility of the prosecutor's stated reasons, the court may look to, among other things, the prosecutor's demeanor; the reasonableness or the improbability of the explanations; and whether the reason is grounded in acceptable trial strategy." Id. A trial court may also consider "side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case" when evaluating whether purposeful racial discrimination occurred. Flowers v. Mississippi, 139 S. Ct. 2228, 2243 (2019). "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third

step." Miller-El v. Dretke, 545 U.S. 231, 241 (2005). However, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Atwater, 451 F.3d at 806 (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)).

Once Defendant raised his Batson objection, the Court gave Defendant the opportunity to set forth a prima facie case. The Court found that he had presented a prima facie case of discrimination by pointing out that the Government used five strikes against one black male, one Hispanic female, and three black females. Dkt. No. 715 at 94:4-96:1; Dkt. No. 706 at 2. Next, the Court called on the Government to articulate a race-neutral explanation for striking the contested jurors. Dkt. No. 715 at 96:2-99:21. After giving Defendant an opportunity to respond, the Court found that the Government articulated race- and gender-neutral explanations for striking each of the potential jurors in question and determined that Defendant did not carry his burden in proving purposeful discrimination. Dkt. No. 715 at 99:22-101:19.

In his motion, Defendant objects to the Government's proffered explanations, arguing that "there were other potential jurors with similar attributes," including many prospective jurors who "were not attentive, mentioned the Longshorem[e]n as employment, were unemployed, and single." Dkt. No. 706 at 3.

6

Defendant argues that "when given the option to strike other[] similarly situated potential jurors, but not a minority, the government waived a peremptory strike." Id.

Defendant's argument fails. An examination of the reasons for each strike shows them all to be non-discriminatory. Furthermore, when considering all of the relevant circumstances, it is clear that the selection process was free from discrimination.

First, the Government struck Juror # 20 from the venire for being inattentive and speaking Spanish. Dkt. No. 715 at 96:12-97:10. No other potential juror on the panel spoke Spanish. Id. at 47:6-12; 97:5-7.[2] This case involved a significant amount of evidence in Spanish, as well as a number of Spanish-speaking witnesses. Because the jurors were required to rely upon the official English translations rather than their own interpretation of the evidence and testimony, speaking Spanish is a legitimate race-neutral explanation for exercising a strike in this case. That a potential juror was inattentive constitutes another reasonable race-neutral explanation. While Defendant asserts that other potential jurors who were not struck were also inattentive, dkt. no. 706 at 3, Defendant never specified which other potential jurors were inattentive, id., nor did the Court identify any such

---

[2] Juror # 55 spoke Spanish, but he was not randomly drawn to sit on the panel. Dkt. No. 47:6-9.

jurors who were not also struck. That is, the Court overruled Defendant's Batson objection based on its own observations of the potential jurors and counselors that supported the conclusion that the strikes were not due to purposeful discrimination. Thus, Defendant has not carried his burden of proving that this strike was improper.

Second, the Government struck Juror # 45. The Government explained that she had ties to the local Longshoremen Association and there have been law enforcement actions with regard to that group. Dkt. No. 715 at 97:12-20. The Government also noted that she had her eyes closed while sitting in the jury box. Id. at 97:21-23. Only one member of the venire mentioned connections to the Longshoremen, the member the Government struck. Id. at 51:3-12 (explaining that both her husband and one of her children work for the local Longshoremen Association); id. at 97:12-23. As the Court noted when ruling on Defendant's initial Batson objection, association with the Longshoremen is a race-neutral explanation. Id. at 101:4-14. According to the Government, the local branch of the Longshoremen have been subject to multiple law enforcement actions. Id. at 97:12-20. The Longshoremen's law enforcement experiences could reasonably raise concerns in a case relying in part on testimony and evidence generated by law enforcement. Additionally, a juror closing their eyes can raise concerns with

8

that juror's attentiveness, which is another race-neutral reason to strike.  Thus, striking the potential juror for her connections to the Longshoremen and having her eyes closed, two race-neutral reasons, does not establish purposeful discrimination.

Third, the Government struck Juror # 5 because he had a prior negative encounter with law enforcement and was self-employed with less stable employment than other potential jurors. Id. at 97:25-98:9. A negative encounter with law enforcement is a sufficient race-neutral reason for a strike based on the specific facts of this case, which relied in significant part on testimony and evidence generated by law enforcement. Having less stable employment is also a reasonable race-neutral rationale because the facts of this case centered in part on an employment dispute. Thus, Defendant has not demonstrated that the Government's strike was actually motivated by purposeful discrimination.

Next, the Government explained that it struck Juror # 31 because she was single, unemployed or had unstable employment, was inattentive, and there was a factual disparity between the documents she submitted to the Court and responses during the selection process. Id. at 98:11-99:9. Several non-minority members of the resulting jury were single, so this weighs in favor of finding purposeful discrimination. Additionally, one white juror who served on the jury was unemployed. Id. at 59:19-22. However,

9

unlike Juror # 31, the uncontested juror stated that she was married, her husband was employed, and she was raising her children. Id. at 59:21–60:3. Furthermore, while Juror # 31 reported to the Court that she was unemployed, in voir dire she reported that she was self-employed, id. at 99:1–9, a disparity not presented by the uncontested juror, id. at 59:11–60:16. Overall, there is not sufficient evidence to show purposeful discrimination motivated this strike because presenting conflicting information to the Court is a race-neutral explanation that could raise significant concerns in this case, which involved reporting false information to the government. Additionally, inattentiveness is a race-neutral reason for striking this potential juror for the reasons explained above. The Government also offered all its explanations simultaneously, rather than offering additional rationales after the defense pointed out any flawed reasoning. Cf. Dretke, 545 U.S. at 245–46 (finding "pretextual timing" where the defendant corrected the government's misrepresentation about a potential juror's views, prompting the prosecutor to offer a different explanation for striking that juror). Thus, Defendant has not proved purposeful discrimination regarding this strike.

 Finally, the Government struck Juror # 24 because she owned and operated a "smoke shop." Dkt. No. 715 at 99:11–21. The government argued that such shops are the focus of certain

regulatory activity that might make an owner less inclined to side with the Government, and they are at times associated with illicit activities. Id. No other potential juror was involved in a similar business, and this is a sufficient race-neutral explanation.

At bottom, Defendant has not shown that the Government used its strikes based on purposeful discrimination. In addition to the considerations discussed above, it is important to note the overall context of the selection. The Government did not strike all minority members of the panel. To the contrary, there were two black jurors on the panel. Moreover, the Government had a strike remaining that it elected not to use. If removing minorities from the panel had been a goal, then utilizing the strike to remove one of the two remaining jurors would have been a clear way to advance it. This was not done. These factors, combined with the Court's own observations of the venire and counsel during voir dire, demonstrate that the Government did not act with purposeful discrimination when it struck these potential jurors. Therefore, Defendant's motion for new trial, dkt. no. 706, is **DENIED**.

B. **Motion for Judgment of Acquittal**

Defendant contends acquittal is necessary because there was insufficient evidence of venue. Dkt. No. 705 at 2–3. That is, he contends the government failed to prove the crimes occurred in the Southern District of Georgia. Id. The Defendant is wrong. Federal

11

Rule of Criminal Procedure 29(a) requires "the court on the defendant's motion [to] enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." When evaluating the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Venue is proper in any district in which the offense was committed. Fed. R. Crim. P. 18; 18 U.S.C. § 3237(a). "[T]he offense of conspiracy is 'committed' in any district in which an overt act is performed in furtherance of the conspiracy." United States v. Lewis, 676 F.2d 508, 511 (11th Cir. 1982). Venue can be proved through direct or circumstantial evidence. Nicholson, 24 F.4th at 1350. The Court may take judicial notice of facts pertaining to venue. United States v. Greer, 440 F.3d 1267, 1272 (11th Cir. 2006) (taking judicial notice "that Cusseta, Georgia is the county seat of Chattahoochee County which is within the Columbus Division of the Middle District of Georgia").

Defendant argues that the prosecution failed to prove its case because "[t]he names of the roads, landmarks, neighborhood, and cities referred to by the [G]overnment are common." Dkt. No. 705 at 3. This argument fails. The Government presented a multitude

of direct and circumstantial evidence showing that the charged offenses occurred in Chatham and Effingham counties, which are in the Southern District of Georgia. See Dkt. No. 714 at 9–10, 13–14 (detailing the evidence that shows venue is proper in the Southern District of Georgia). For example, the Government presented evidence such as phone records, cell site location data, and witness testimony indicating that Eliud Montoya was killed in Chatham County due to complaints he filed in Chatham County about work conditions he experienced in Chatham County. Id. at 9–10. Additionally, Pablo and Juan Rangel-Rubio, who lived in Effingham County, issued paychecks with Chatham County and Effingham County addresses to illegal aliens. Id. at 9.

Further, the Court took judicial notice under Federal Rule of Evidence 201 that many of the locations identified during trial occurred in cities within the Southern District of Georgia and that Chatham County is in the Southern District of Georgia. Dkt. No. 717 at 137:18–19, 138:14–25. Although overkill, the Court now takes judicial notice that Effingham County is in the Southern District of Georgia. 28 U.S.C. § 90(c)(3) ("The Savannah Division comprises the counties of Bryan, Chatham, Effingham, and Liberty."); Greer, 440 F.3d at 1272; United States v. Males, 715 F.2d 568, 570 n.2 (11th Cir. 1983) (taking judicial notice that Miami is in Dade County, Florida on direct appeal of defendant's

13

conviction and the denial of his motion for acquittal). Therefore, Defendant's motion for judgment of acquittal, dkt. no. 705, is **DENIED**.

## CONCLUSION

Because the Government articulated legitimate race-neutral explanations for striking the potential jurors in question and Defendant did not prove purposeful discrimination, Defendant's motion for new trial, dkt. no. 706, is **DENIED**.  The Government provided overwhelming evidence that the crimes and attendant overt acts occurred in Chatham and Effingham Counties in the state of Georgia. A summary of all the testimony and exhibits proving these venue facts spans multiple pages. Dkt. No. 714 at 4-7. The Court properly took judicial notice that Chatham and Effingham Counties are within the Southern District of Georgia. Any proof that the crimes occurred outside the Southern District of Georgia—in, as Defendant posits, Kansas, New York, or Michigan—was, in a word, nonexistent. Defendant's Renewed Motion for Judgment of Acquittal, dkt. no. 705, is **DENIED**.

**SO ORDERED** this 10th day of April, 2023.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA